FILED
JAMES BONINI
CLERK

05 MAY 31 NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 04-3379

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
MAY 2 5 2005
LEONARD GREEN, Clerk

**REBECCA SUMMERS,**
    Plaintiff-Appellant,

v.

**KEEBLER COMPANY, and
BAKERY, CONFECTIONERY &
TOBACCO WORKERS' AND GRAIN
MILLERS, LOCAL 253**
    Defendants-Appellees

On Appeal from the
United States District Court for the
Southern District of Ohio

1:02cv368

---

Before: KENNEDY and MOORE, Circuit Judges; and RESTANI, Judge.[*]

**KENNEDY, Circuit Judge.** The Plaintiff, Rebecca Summers, appeals from the district court's order granting summary judgment in favor of the Defendant, Bakery, Confectionary & Tobacco Workers and Grain Millers, Local 253 (the Union), on her claims, under 29 U.S.C. §§ 185 and 159(a), that the Union breached its duty of fair representation

BACKGROUND

Relations between Keebler and the Union are governed by a collective bargaining agreement (CBA). Prior to April 1, 2000, the agreement provided that if an employee were intoxicated while at work, he or she would be subject to termination. On April 1, 2000, Keebler implemented a revised substance abuse policy, providing that an employee who reported to work

---

[*] The Honorable Jane A. Restani, Chief Judge for the United States Court of International Trade, sitting by designation.

1

with a blood alcohol level of .02 percent or greater was in violation of the policy and eligible for termination. In January 2000, Keebler's human resources director Sharon Maul had a conversation with Union president Dave Richardson about Keebler's upcoming implementation of the Policy and sent Richardson a copy of the new Policy. On March 16, however, Richardson wrote Maul informing her that he had just been made aware of the planned change to the drug policy and asserted that the Policy could not be implemented without a bargaining session between the Union and Keebler. In September of 2000, the International Union told Richardson that Keebler was within its right to unilaterally implement the policy.

From 1984 until 2001, Rebecca Summers was an employee of the Keebler Company and a member of the Union. She worked as a "mixer" at Keebler's Cincinnati bakery and worked the 3 a.m. to 11 a.m. shift. On August 29, 2000, after drinking all night, Summers arrived at work intoxicated. While at work, she passed out and was taken to the hospital where tests revealed that she had a high blood alcohol level. Summers was suspended pending completion of a rehabilitation program. Keebler reinstated Summers pursuant to a last chance agreement whereby Summers agreed to submit to random drug and alcohol testing for eighteen months, and whereby she agreed that should she test positive for alcohol or drugs she would be terminated. The last chance agreement specifically provides that "[i]t is understood and agreed that should Ms. Summers be terminated for violation of the Substance Abuse Policy, the parties may grieve the appropriateness of the charge only and cannot contest the degree of penalty."

According to Summers, some time after she signed the last chance agreement, she met with Richardson and he told her that as long as she tested lower than .10 on her drug test she would not test positive under the policy. Summers' friend and coworker, Paul Smith, testified

that, sometime shortly after Summers signed the last chance agreement, Richardson told Summers in his presence, that the alcohol limit was "basically the same as the State of Ohio" for driving under the influence, which was .10 or greater. Although in her affidavit Summers states that Richardson represented to her that the limit was .10 in April 2001, in her deposition Summers testified that her conversation with Richardson about the .10 limit occurred after the positive drug test that eventually resulted in her termination.

At work on November 27, 2001, Summers was randomly tested for drugs and alcohol. The test showed that she had a blood alcohol content of .033. A second alcohol test taken later showed a blood alcohol level of .025. Summers was terminated on November 30, 2001, for violating her last chance agreement. Summers contended that these levels occurred in part because of her ingestion of cough medicine and certain cough drops prior to reporting to work. Summers also admitted to drinking one or two beers the evening before she reported to work at 3:00 a.m.

After Summers' termination, Richardson filed a grievance on Summers' behalf. Richardson filed the grievance because Summers told him she had not been drinking. Although Richardson knew Summers had been drinking the night before, he took her statement to mean that she had finished drinking many hours before reporting to work so that the alcohol would have left her system before she started her shift. Richardson then faxed the International Union, complaining that Sharon Maul had never given him the revised substance abuse policy and that she had told him three months prior that the alcohol limit was .10. Richardson testified that at the time he faxed the International Union, he had received the Policy but forgotten that he had. Richardson also testified that he had thought Maul told him the limit under the Policy was the

same as "Ohio for driving" but upon further reflection, testified that Maul had probably said that she did not yet know and would have to "look and see."

Keebler denied Summers grievance on December 3, 2001. The union pursued the grievance to the second level of review and Keebler again denied the grievance. At a March 10, 2002, meeting of the Union's Executive Board, the Union voted not to arbitrate Summers' case. Thereafter, Summers filed this action alleging that the Union breached its duty of fair representation.

## ANALYSIS

In this appeal we are called upon to consider whether the district court properly dismissed Plaintiff's claims under Section 301 of the Labor and Management Relations Act, 29 U.S.C. § 185 and Section 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a), in which she alleges that the Union breached its duty of fair representation.

To recover in a § 301 case, the employee must prove both that the employer's actions violated the terms of the collective bargaining agreement and that the union breached its duty of fair representation. *DelCostello v. Teamsters*, 462 U.S. 151, 164-65 (1983). In her complaint, the Plaintiff makes the conclusory allegation that Keebler discharged her in violation of the labor agreement. Nowhere in her complaint does she explain how her discharge was in violation of the labor agreement. Moreover, although the Union characterized the Plaintiff's claim as a hybrid § 301 claim in its summary judgment motion, the Plaintiff in her argument in response not only does not argue that Keebler violated the collective bargaining agreement but also does not even refer to her § 301 claim at all. For the first time on appeal, she explains that her "claim against Keebler rests upon the fact that the [last chance agreement] is not an agreement which is

4

supported by the CBA" since it is a side agreement that conflicts with the CBA's provisions.[1] Arguments raised for the first time on appeal are waived. *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999). Even if it were not waived, this allegation would still not support a finding of a § 301 violation. For even if the last chance agreement were construed to violate the collective bargaining agreement, such a violation did not cause the Plaintiff's injury. The Plaintiff alleges she was injured by being discharged from her job. Without signing the last chance agreement in the first place after she had passed out on the job due to intoxication, she would have been justifiably terminated. Her signing of the last chance agreement saved her from being terminated. Moreover, even without the last chance agreement, when she tested positive for an alcohol content of greater than .02, Keebler was within in its rights under its drug and alcohol policy to terminate her.

The Plaintiff also asserts that the Union breached its duty of fair representation under § 9(a). The primary focus of her claim appears to be that Richardson, the Union's president, misled her to believe that the revised substance abuse policy was not binding or that, even if it were binding, that she would not test positive under the policy so long as she tested under an alcohol level of .10. In her complaint, she also asserts that the Union breached its duty of fair representation by not adequately investigating her grievance and by withdrawing her grievance. In her appellate brief, however, she merely asserts that Richardson filed a grievance on her behalf, agreeing that her termination was not a violation of the last chance agreement, and that Richardson had promised that he would ensure her grievance would go to arbitration.

---

[1] In her memorandum in opposition to the Defendant's motion for summary judgment, she did allege that the Union breached its duty of fair representation under § 9(a) (not § 301) by having her sign a last chance agreement which was not authorized by the collective bargaining agreement.

Section 9(a), in conjunction with 28 U.S.C. § 1337, creates a jurisdictional basis for actions for breach of the duty of fair representation independent of § 301. *Breininger v. Sheet Metal Workers Int'l*, 493 U.S. 67, 83 (1989). Since to establish a § 9(a) claim, a plaintiff need only show that the union breached its duty of fair representation, and not that there was also a violation of the collective bargaining agreement, as must be shown in a § 301 claim, the courts have long held that a plaintiff cannot circumvent the dual § 301 requirements by "artfully pleading 28 U.S.C. § 1337 as a jurisdictional basis and casting their duty of fair representation claims as independent causes of action in what are, in substance, hybrid 301 claims." *Pratt v. United Auto., Aerospace and Agric. Implement Workers of Am., Local 1435*, 939 F.2d 385, 389 (6th Cir. 1991) (quoting *White v. Anchor Motor Freight, Inc.*, 899 F.2d 555, 562 (6th Cir. 1990)). Thus, where a plaintiff's complaint states a "colorable claim" under the collective bargaining agreement, it must be construed as a § 301 claim rather than a § 9(a) claim. *Id.*

In the instant case, the Plaintiff makes a claim for breach of the Union's duty of fair representation that is independent of any breach of the collective bargaining agreement. Plaintiff argues not that Keebler discharged her in violation of the contract (rather, she appears to concede that it was within its right to discharge her because she tested with a blood alcohol content above .02) but that she would not have been dismissed but for Richardson's misrepresentations concerning the blood alcohol content level that would justify dismissal. That is, if she had not been misled as to the policy's actual blood alcohol content limit, she would have exercised greater caution in assuring that she did not exceed that limit. But, under the impression that the limit was .10, she was led to believe that she would not be in violation of the policy if she only had a couple of beers before coming to work.

A union breaches its "statutory duty of fair representation . . . only when [its] conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967) (internal citations omitted). A union's actions are arbitrary "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness[] as to be irrational." *Air Line Pilots v. O'Neill*, 499 U.S. 65, 67 (1991). To show bad faith, a plaintiff must show evidence of fraud, deceitful action, or dishonest conduct. *Humphrey v. Moore*, 375 U.S. 335, 348 (1964). Mere negligence or poor judgment does not establish a breach of the Union's duty of fair representation. *See United Steelworkers v. Rawson*, 495 U.S. 362, 373 (199); *see also Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 584 (6th Cir. 1994). "[M]erely characterizing a union's conduct as arbitrary, perfunctory or demonstrative of bad faith is insufficient to withstand summary judgment. Rather, to meet his burden of proof as to the union's breach of its duty of fair representation, a plaintiff must establish by substantial evidence that the union acted arbitrarily, discriminatorily or with bad faith." *Damphousse v. Great Lakes Steel*, 219 F. Supp. 2d 833, 837 (E.D. Mich. 2002) (citing *Motor Coach Employees v. Lockridge*, 403 U.S. 274, 2999 (1971)).

The district court properly dismissed the Plaintiff's breach of duty of fair representation claim because no reasonable juror could find that the Union acted in bad faith or arbitrarily. As the district court accurately noted, the Plaintiff "produced no evidence that Richardson's statements about the Policy stemmed from anything other than confusion or poor judgment." Since the Plaintiff failed to show evidence of fraud, deceitful action, or dishonest conduct, it could not establish that Union acted in bad faith.

In her complaint, the Plaintiff also alleged that the Union breached its duty of fair representation by not adequately investigating her grievance and by withdrawing her grievance. It is not clear that she even maintains this argument, since, in her appellate brief, she merely asserts that "Richardson filed a grievance on her behalf, agreeing that her termination was not a violation of the last chance agreement, and that Richardson had promised that he would ensure her grievance would go to arbitration." To the extent she does maintain the argument that the Union arbitrarily failed to pursue her grievance, the district court properly dismissed it.[2] As the district court properly concluded, "[s]ince the International Union had told the Union that Keebler could implement the Policy, [the Plaintiff]'s breath tests showed that she was in violation of the Policy, and the last chance agreement specifically stated that violation of the Policy would result in termination, it cannot be said that the Union's decision to withdraw [the Plaintiff]'s grievance after Keebler denied it at the first level of review was arbitrary." The allegation she makes in her appellate brief regarding Richardson's assurances to pursue her grievance to arbitration does not state a claim for breach of duty of fair representation.

For the foregoing reasons, we AFFIRM.

---

[2] To the extent she maintains this claim, this claim would likely not be considered independent from her § 301 claim. That is because it makes a "colorable claim" under the collective bargaining agreement since the only way the Plaintiff could recover under her claim that the Union failed to pursue her grievance is to prove that Keebler breached the collective bargaining agreement in discharging her. Even assuming *arguendo* that this claim could be cognizable under § 9(a), it is without merit.